The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with minor modification of the issue of defendants credit.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, and in a Pre-Trial Agreement as,
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. All parties are properly before the Commission and the Commission has jurisdiction over the parties and of the subject matter.
3. All parties have been properly designated and there is no question as to misjoinder or non-joinder of parties.
4. On May 26, 1997, an employer-employee relationship existed between the parties and the defendant-carrier was the insurer on the risk.
5. On May 26, 1997, the employees average weekly wage was $280.00, which yields a weekly compensation rate of $186.68.
6. Plaintiff worked for Kenny Hacker on September 3, 4, and 9, 1997.
7. Stipulated Exhibits include: Stipulated Exhibit #1 Plaintiffs medical records (47 pages); Stipulated Exhibit #2 Plaintiffs Responses to Defendants First Set of Interrogatories (11 pages).
8. The undersigned takes judicial notice of the Industrial Commission Forms 18, 19, 33, 33R, 61 and 63.
9. The depositions of Dr. Stephen R. Ainsworth and Dr. Brian J. Battersby, Jr. were received into the evidentiary record following the hearing before Deputy Commissioner Stanback.
***********
The Full Commission adopts with modification the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. At the time of the hearing before Deputy Commissioner Stanback, plaintiff was twenty-nine years old. Plaintiff began working on April 21, 1997 as a general laborer for defendant-employer, a company that lays utility cables.
2. On May 26, 1997, defendant-employer was laying pipe and connecting a fire hydrant. Plaintiff testified that while working on that date he was in and out of a hole approximately three to four feet deep. Plaintiff stated that he jumped into a hole on that morning and allegedly twisted his left leg. Nevertheless, plaintiff kept working. After lunch, plaintiff allegedly jumped back into the hole; however, this time there was mud up to his ankle and he allegedly twisted his left knee. According to plaintiff, Greg Henry and Marty Mensch jumped into the hole and helped him out. Neither of them recall helping plaintiff; however, plaintiff did make them aware of his alleged injury.
3. Later that evening, plaintiff went to the emergency room at Craven Regional Medical Center. Plaintiff was diagnosed with a left knee sprain and was referred to Dr. Brian J. Battersby, an orthopedic surgeon.
4. Plaintiff saw Dr. Battersby on May 29, 1997, giving a history of slipping and falling while in a hole at work. Dr. Battersbys physical exam revealed that plaintiffs anterior cruciate ligament (ACL) was out, and there was tenderness along the medial collateral aspect of plaintiffs left knee. Dr. Battersby aspirated the knee and ordered strengthening exercises.
5. Plaintiff continued to experience excruciating knee pain, therefore Dr. Battersby ordered an MRI. The results revealed an ACL disruption and medial meniscal tear. Consequently, on July 18, 1997, Dr. Battersby performed a partial meniscectomy of the medial meniscus of the left knee and anterior cruciate ligament repair.
6. Defendants initially accepted this claim on a Form 63 dated June 26, 1997 and paid medical bills associated with plaintiffs alleged injury. Following an investigation, defendants timely denied this claim on September 25, 1997.
7. Plaintiff had three injuries to his left knee other than the one he alleges occurred during the course of his employment with defendant-employer. On November 18, 1996, plaintiff went to Craven Regional Medical Center emergency room for injuries after a dirt bike fell on his left knee. On March 27, 1997, plaintiff was again seen at Craven Regional Medical Center following an altercation with his ex-wifes boyfriend. During the altercation plaintiff was hanging onto the neck of the boyfriend who was trying to drive away in a car. Plaintiff either fell and hit his left knee or the car hit his knee. As a result of this incident, plaintiff was diagnosed with sprained medial ligaments of the left knee and possibly torn ligaments. X-rays taken of the left knee indicated a large effusion. On June 14, 1997, plaintiff was again seen in the emergency room of Craven Regional Medical Center stemming from a fight in which plaintiff was hit on the head and kicked in the left knee. Plaintiff was diagnosed with a recurrent sprain to the left knee and the hospital physician was concerned about a cartilage or ligament tear. Plaintiff did not reveal these incidents to Dr. Battersby but instead provided an inaccurate history.
8. Following plaintiffs alleged injury by accident, he did not return to work for defendant-employer. Plaintiff began work for Kenny Hackers Lawn Service, but his testimony on this issue is inconsistent and contradicted. Plaintiff stated in his Answers to Defendants Interrogatories that he worked for Kenny Hacker Lawn Maintenance for one day. Plaintiff stipulated at the hearing that he worked for Kenny Hacker some on September 3, 4 and 9, 1997. At the hearing, Mr. Hacker testified that plaintiff came to work for him at the end of July or the first of August, 1997 and worked three to five days a week for about eight weeks. During that period of time, plaintiff was paid in cash at the rate of $8.00 per hour. Greater weight is given to Mr. Hackers testimony than to that of plaintiff.
9. Plaintiffs ex-wife, Yvonne Lopes Byrd, testified that she knew plaintiff for over nine years. She was married to him until their divorce on June 2, 1998. Mrs. Byrd indicated in her recorded statement to Nadine Martin, defendant-carriers insurance adjuster, that when she learned of plaintiffs alleged on-the-job injury, plaintiff told her "I am finally going to have my knee operated on. She further stated that plaintiff said "he nicely fell in a ditch at work. Mrs. Byrd further testified that plaintiff took her husband and former boyfriend, William Byrd, to court over the March 25, 1997 car dragging incident. According to Mrs. Byrd, plaintiff requested the judge to have Mr. Byrd pay for medical bills associated with his knee injuries. Mrs. Byrd testified that after the judge failed to order restitution, plaintiff stated that his knee was still hurting him and that he was going to get an operation on his knee one way or another. Mrs. Byrds testimony is accepted as credible.
10. In 1995, plaintiff was convicted of possession of marijuana and drug paraphernalia. Plaintiff was also convicted of three counts of felony public assistance fraud on January 25, 1996. Plaintiff was additionally convicted on January 25, 1996 of the felony charge of obtaining property under false pretenses.
11. Dr. Steven Ainsworth, an orthopedic surgeon, saw plaintiff on July 2, 1997. At this time, plaintiff informed Dr. Ainsworth that his prior medical history included a previous injury to his left knee in October of 1996, but that he was able to return to work the day following that injury. Plaintiff further told Dr. Ainsworth that he had not had problems with his knee since October 1996 until his alleged on-the-job accident in May 1997. Plaintiff did not inform Dr. Ainsworth of the March 1997 altercation with Mr. Byrd or the incident on June 14, 1997 when he was assaulted and kicked in the left knee.
12. Although Dr. Ainsworths medical note indicated that all of plaintiffs injuries were adequately explained by the mechanism of injury in May of 1997, his opinion was based on his inaccurate assumption that plaintiff had not had any significant problems from the previous injury up to and including the May incident. Once these scenarios were included in plaintiffs medical history, Dr. Ainsworth was unable to render an opinion with respect to the causation of plaintiffs knee condition.
13. Dr. Battersby testified as an advocate for plaintiff. Dr. Battersby was absolutely certain that plaintiff had an acute injury from the May 1997 incident and that it was utter nonsense to pre-suppose that plaintiff had been able to tolerate such an injury had it happened before May 1997. During the deposition, Dr. Battersby repeatedly interrupted both counsel and expressed his personal opinion that "you guys (the defendants) are going to come after Joe. Nevertheless, Dr. Battersby did admit that plaintiff had not revealed his previous or subsequent knee injuries, but that these were nonetheless totally irrelevant. Dr. Battersbys opinions are given little weight and greater weight is given to the opinions expressed by Dr. Ainsworth.
14. Plaintiffs inconsistent and contradictory testimony, coupled with his criminal record, less than candid recitation of prior medical history to his physicians, along with his demeanor at the hearing before the Deputy Commissioner shows a total lack of credibility on the part of plaintiff, if not an intentional effort to deceive. Therefore, plaintiffs testimony concerning his alleged injury by accident of May 26, 1997 is not credible. Considering the lack of credibility on the part of plaintiff and the inaccurate, if not outright deceiving, information provided by him to his physicians, there is insufficient medical evidence with respect to causation of the alleged injury, if in fact any incident even occurred. In fact, when considering the credible evidence of record, it is likely that plaintiff fabricated the alleged incident or he possibly willfully intended to injure or further aggravate his pre-existing knee condition while on the job on May 26, 1997, in order to receive the medical attention he needed. Plaintiffs conduct in this case is egregious and rises to the level of willful misrepresentation resulting in plaintiff improperly receiving benefits including payment of medical treatment.
***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On May 26, 1997, plaintiff did not sustain a compensable injury by accident arising out of and in the course of his employment with the defendant-employer, nevertheless plaintiff was paid benefits and received medical treatment paid for by defendants. G.S. 97-2(6).
2. Assuming arguendo that any injuries or aggravations were sustained on May 26, 1997 by plaintiff to his left knee, those injuries were proximately caused by plaintiffs willful intention to injure himself, and therefore plaintiff is not entitled to compensation for the same. G.S. 97-12(3).
3. Defendants are entitled to reimbursement by plaintiff for any benefits or medicals paid as a result of his alleged injury by accident which defendants timely denied on September 25, 1997.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 ORDER
1. Under the law, plaintiffs claim must be, and the same is, DENIED.
2. Plaintiff shall reimburse defendants for all benefits paid, including reimbursement for the payment of any medical treatment.
3. Each side shall bear its own costs.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_______________ CHRISTOPHER SCOTT COMMISSIONER
DCS:nwg